IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01895-KLM

EDDIE MARIO MARTINEZ,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security[1]
_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court[2] on review of the Commissioner's decision denying Plaintiff's claim for Disability Insurance Benefits and Supplemental Security Income Benefit pursuant to Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401, *et seq*. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).

The Court has reviewed Plaintiff's Opening Brief [#14] (the "Brief"), Defendant's Response Brief [#15] ("Response"), Plaintiff's Rely Brief [#18] ("Reply"), the Social Security Administrative Record [#11] ("Tr."), and the applicable law and is sufficiently advised in the

---

[1] On June 17, 2019, Andrew M. Saul was sworn in as the Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See* [#21].

-1-

premises. For the reasons set forth below, the decision of the Commissioner is **REVERSED** and **REMANDED** for further fact finding.

## I. Background

Plaintiff was born on January 28, 1961. Tr. 167. His past work was as a truck driver, laundry worker, folding machine operator, janitor, degreaser, and fire extinguisher repairer. Tr. 17. He last worked in 2009 as a driver for a laundry business. Tr. 186, 192.

Plaintiff filed a claim for Disability Insurance Benefits and Supplemental Security Income Benefits in December 2014. Tr. 11, 147-55. Plaintiff alleged disability due to gout, problems with swelling of foot and knees, arthritis, and left wrist issues, and alleged an amended disability onset date of May 24, 2013. Tr. 147, 151, 186.

Plaintiff's applications were denied, Tr. 81-89, and he requested an administrative hearing before an Administrative Law Judge ("ALJ"). Tr. 93-94. A hearing before ALJ William Musseman was held on Plaintiff's claim on March 27, 2017. Tr. 23-35.

Plaintiff testified at the hearing that he was 56 years old, and that his knees gave him the most problem, with pain and swelling. Tr. 27. He stated that he has pain and arthritis in his shoulders and neck, and problems with his hips. Tr. 29-30. Plaintiff further said he has problems standing; can be on his feet ten to fifteen minutes before he needs to sit down; his knees swell when he is active; and he can only walk three blocks. Tr. 28. Plaintiff testified that he sometimes has to elevate his legs and ice his knees for four to five days to get the swelling down. Tr. 29. He is on medication for pain and gout. Tr. 31.

The ALJ denied Plaintiff's claim for benefits in a decision dated June 20, 2017. Tr. 11-18. In the sequential evaluation process required by law, the ALJ found that Plaintiff

met the insured status requirements of the Act through December 31, 2014, and that Plaintiff had not engaged in substantial gainful activity since the amended onset date of May 24, 2013. Tr. 13. At step two, the ALJ found Plaintiff had the severe impairment of osteoarthritis in his knees. Tr. 14. At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled the requirements of a Listing. Tr. 14.

As to residual functional capacity ("RFC"), the ALJ found that Plaintiff has the capacity "to perform medium work . . . except [Plaintiff] is limited to occasional climbing of ladders and scaffolds, and frequent operation of foot and leg controls." Tr. 14. The ALJ also found that Plaintiff's "medically determined impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirety consistent with the medical evidence and other evidence in the record[.]" Tr. 14-15.

At step four, the ALJ found with the assistance of a vocational expert that Plaintiff remained able to perform his past relevant work. Tr. 17. Accordingly, the ALJ did not proceed to step five. The ALJ concluded that Plaintiff has not been under a disability, as defined in the Act, from May 24, 2013, through the date of the decision. Tr. 18. Plaintiff's claim for benefits was therefore denied. Tr. 18.

The Appeals Council declined Plaintiff's request for review. Tr. 1-4. Thus, the ALJ's decision became final for purposes of judicial review.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

[T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such

benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Substantial evidence is

more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

"Evidence is not substantial if it is overwhelmed by other evidence or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

A court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. However, it "may not reweigh the evidence nor substitute [its] judgment" for the Commissioner's. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice. . . ." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

### III. Analysis

Plaintiff argues that the ALJ did not have valid reasons for giving little weight to state agency examiner Dr. Maisel's standing and walking restrictions, and that the RFC assessment that Plaintiff can perform medium work is not supported by substantial

evidence. *Brief* [#14] at 10, 19. Further, Plaintiff notes the Commissioner's position that the ALJ relied on parts of Dr. Maisel's opinion to support the finding of non-disability; however, the ALJ said he gave Dr. Maisel's entire opinion little weight and found no redeeming qualities in the opinion. *Id.* at 3-4. If the ALJ did rely on parts of Dr. Maisel's opinion but not others, Plaintiff states that the ALJ did not offer any reason in support of this. *Reply* [#18] at 3-4.

The Court notes that Dr. Maisel, a state agency consultant, examined Plaintiff and limited him to standing and walking "up to a total of two hours in a four-hour day." Tr. 256. Dr. Maisel also opined that Plaintiff could sit without limit, and lift 60 pounds occasionally and 25 pounds frequently. Tr. 256.

While the ALJ stated that he gave "little weight" to Dr. Maisel's opinion, the RFC was, in many ways, consistent with Dr. Maisel's opinion as noted by the Commissioner. *See Response* [#15] at 8-9. Thus, the ALJ found that Plaintiff could perform medium work (Tr. 14), consistent with Dr. Maisel's opinion regarding Plaintiff's capacity to lift (Tr. 256).[3] The ALJ also imposed a climbing restriction but no sitting limitations (Tr. 14), consistent with Dr. Maisel's opinion (Tr. 256). The only opinion of Dr. Maisel that the ALJ rejected was the standing and walking restriction. This is significant because it would likely preclude Plaintiff from medium work. *See* SSR 83-14, 1983 WL 31254 at *5 ("Most medium jobs, like light jobs, require the worker to stand or walk most of the time."). Moreover, the grids would dictate a finding that Plaintiff was disabled if he was reduced to a RFC of light work

---

[3] Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). By contrast, heavy work involves "lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. 20 C.F.R. § 404.1567(d).

and he did not have transferrable skills. See 20 C.F.R. Part 404, Subpart P, Appendix 2, Section 202.06.

In light of the foregoing, the ALJ's decision to give "little weight" to the opinion of Dr. Maisel's report is problematic for two reasons. First, the ALJ's decision fails to acknowledge that the ALJ accepted (or rendered an opinion consistent with) the portion of Dr. Maisel's opinion that supported the finding of disability while rejecting the portion that did not. The ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position . . . .'" *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10thCir. 2008) (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)); *Lee v. Barnhart*, 117 F. App'x 674, 678 n. 2 (10th Cir. 2004) ("The ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability.").

Second, if the ALJ gave little weight to Dr. Maisel's opinion, and did not rely on that opinion for his RFC assessment, this raises the question of how the ALJ determined that Plaintiff was able to perform medium work with a climbing restriction but no sitting limitations, the same functional capacity assessed by Dr. Maisel (with the exception of the standing and walking restrictions). The only other medical opinion in the record, by Dr. Velma Campbell, supports Dr. Maisel's restrictions, as she limited Plaintiff's standing and walking to three hours a day along with other limitations. Tr. 296. The opinions of both Dr. Campbell and Dr. Maisel appear to be inconsistent with medium work. SSR 83-14, 1983 WL 31254 at *5. No medical source issued a conflicting opinion. Yet, the ALJ rejected the opinions of both physicians.

While the Commissioner correctly asserts that the ALJ's RFC does not necessarily need to be based on a medical opinion, *see Chapo v. Astrue,* 682 F.3d 1285, 1288 (10th Cir. 2012), the RFC must, nonetheless, as with all of the required findings, be properly supported. *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999). Here, the ALJ did not rely on Plaintiff's testimony and reports of his activities to assess the RFC, finding they were not credible. Tr. 15-16. Instead, the ALJ stated the RFC:

> is supported by the medical records showing that the claimant's osteoarthritis limit[s] his ability to perform work related activity. Thus, after reviewing all the medical evidence, the [RFC] limits the claimant to work at the medium exertional level in order to reflect his limitations. The residual functional capacity stated above is well supported by the totality of the medical opinion evidence, the objective medical findings, and other medical evidence found in the record as well as the consistent statements of the claimant to his examining health care providers. The record does not contain evidence of abnormal clinical and laboratory findings sufficient to document any further degree of loss of function than established in this finding.

Tr. 17.

The ALJ cited to various medical records to support his RFC. These records indicated such things as "no evidence of deep venous thrombosis"; "only moderate degenerative changes" noted in the right knee joint; "knee pain was intermittent" during exam; "visual overview of all four extremities was normal"; Plaintiff "reported feeling well with no concerns"; the osteoarthritis was "stable"; Plaintiff "has taken ibuprofen 600 mg for at least three and a half years suggesting that his medication dosage has been stable[.]" Tr. 16. Following this discussion, the ALJ then immediately stated that "[t]o accommodate the claimant's osteoarthritis and shoulder pain, the [RFC] limits the claimant to work at the medium exertional capacity" with the restrictions previously noted. *Id.* The ALJ did not provide an explanation as to how the cited evidence translated into the RFC assessment.

None of the evidence relied on by the ALJ provides support for the finding that Plaintiff can perform medium work with the restrictions noted by the ALJ. The treatment notes cited by the ALJ do not address Plaintiff's ability to work or assess his functional abilities, or logically suggest that Plaintiff has the lifting or standing capacity for medium work. If the Court accepts the ALJ's representation that he gave "little weight" to Dr. Maisel's opinion and that he relied on other medical evidence in the record, the RFC finding as to medium work with certain restrictions is unsupported. *See Baker v. Barnhart*, 84 F. App'x 10, 14 (10th Cir. 2003) (where no doctor had defined a claimant's capability for walking, standing or sitting, etc., and "[t]here is a lack of evidence about what [the claimant] can do apart from her own testimony, which the ALJ rejected", "the ALJ was not in a position to make any RFC determination—there is no evidence to support such a finding").[4]

The RFC assessment also did not "'include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence.'" *Wells v. Colvin*, 772 F.3d 1061, 1065 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). Further, it did not "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence[,]" or provide a logical

---

[4] *See also Green v. Colvin*, No. 2:14 CV 00076 JMB, 2015 WL 4887824, at *6 (E.D. Mo. Aug. 17, 2005) (a remand was required where the RFC limitation regarding the ability to sit "has no basis in any objective medical evidence, and therefore is not supported by substantial evidence"); *Palascak v. Colvin*, No. 11-CV-0592, 2014 WL 1920510, at *9 (W.D.N.Y. May 14, 2014) ("Where, as here, the medical findings and reports merely diagnose the claimant's impairments without relating the diagnoses to specific physical, mental, and other work-related capacities, the administrative law judge's determination of residual functional capacity without a medical advisor's assessment of those capacities is not supported by substantial evidence.").

explanation as to how Plaintiff's pain and other symptoms impacted his ability to work. SSR 96-8p, 1996 WL 374184, at *7. The lack of support for the RFC, alone, requires a reversal and remand of the case.

However, Plaintiff also argues that the reasons given by the ALJ to reject Dr. Maisel's opinion as to the standing and walking restrictions were deficient. The Commissioner asserts in response that the ALJ permissibly discounted Dr. Maisel's opinion that Plaintiff could stand or walk only two hours per day due to knee and back pain, finding it inconsistent with the record. *Id.* The Commissioner further avers that the ALJ "adequately explained why he was not persuaded" by Dr. Maisel's opinion as to Plaintiff's capacity to stand and walk[,]" and that the ALJ's decision should be affirmed. *Response* [#15] at 8-9. The Court does not agree, finding that the ALJ did not give good reasons for the weight he assigned the opinion. *Vigil v. Colvin*, 805 F.3d 1199, 1202 (10th Cir. 2015) ("When assessing a medical opinion, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) and give good reasons for the weight he assigns to the opinion.")

The ALJ gave little weight to Dr. Maisel's opinion because "it was a one-time examination and [Dr. Maisel] does not have a longitudinal history with the claimant." Tr. 26. While "an opinion of an examining rather than treating medical-source opinion may be dismissed or discounted", the ALJ must "provide specific, legitimate reasons for rejecting it." *Chapo*, 682 F.3d at 1291-92 (citation omitted). Here, the only other reason given for rejecting Dr. Maisel's opinion was that it "is not consistent with the overall medical evidence of record." Tr. 16. The ALJ gave specific examples from the treatment notes to support this finding. *Id.* The Court finds that the treatment notes relied on by the ALJ do not support the ALJ's finding that Dr. Maisel's opinion is not consistent with the medical

evidence, as explained below.

Thus, the ALJ first noted that Plaintiff reported to his primary care provider that he was feeling well and had no other concerns (Tr. 16), citing pages 1, 8, and 15 of Exhibit 5F. Tr. 270, 277, and 284. The ALJ improperly selectively applied this evidence. *See Carpenter*, 537 F.3d at 1265. The notes indicate that Plaintiff was at a follow-up visit for hypertension, wherein he reported he was feeling well. Tr. 270. He also stated that he took his medication regularly, was "coping well overall", "doing well with ibuprofen occasionally" and had "[n]o other concerns." Tr. 270. While Plaintiff's statements could be interpreted to apply to Plaintiff's knee and other impairments, the treatment notes list osteoarthritis in the knee as a chronic condition requiring ibuprofen 600 mg daily. Tr. 270, 279, *see also* 272, 279-80. The notes thus do not conflict with or provide a basis to reject Dr. Maisel's physical restrictions. Also, the fact that a claimant is generally doing well on medications does not address whether the claimant has work-related restrictions. *Gasiorowski v. Colvin*, No. 12-cv-3068-WYD, 2014 WL 1292871, at *5 (D. Colo. March 31, 2014) (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).

The ALJ next notes that Plaintiff received a Toradol injection, was advised to take ibuprofen, perform low impact exercises, and do ice and heat therapy (Tr. 16), citing Exhibit 5F, page 13. Tr. 282. The cited treatment note additionally states that Plaintiff received a knee sleeve, a prescription of ibuprofen 600mg, and knee x-rays, which the ALJ did not discuss. Tr. 282. This note also does not provide a basis to discount Dr. Maisel's opinions; if anything, it provides support for Plaintiff's complaints of ongoing knee pain and the need to take pain medications.

-11-

The ALJ also cited "Ms. Becerril's notation that Plaintiff's arthritis was stable, that he should continue ibuprofen, and try to exercise" (Tr. 16), citing Exhibit 5F, page 3. Tr. 272). The fact that the knee condition was stable does not mean, however, that it was asymptomatic or that the condition had resolved, and the ALJ was making an improper lay judgment about this issue. *See Morales v. Apfel*, 225 F.3d 310, 319 (3rd Cir. 2000) (finding that it was not "proper for the ALJ to reject a doctor's opinion based on a notation that the plaintiff was "stable with medication" because "[t]he relevant inquiry with regard to a disability determination is whether the claimant's condition prevents him from engaging in substantial gainful activity", and noting that the home environment may be very different from a work environment); *Washington*, 37 F.3d at 1440-41 (a psychiatrist's observation of claimant's relative stability under nonstressful circumstances did not undercut the treating physicians' opinions about the plaintiff's inability to cope with the stress of handling people and demands in the work setting). Indeed, Ms. Becerril noted that the knee condition was chronic (Tr. 272), and her recommendation to continue ibuprofen and to exercise confirms that the knee problems had not resolved. Thus, Ms. Becerril's findings are not inconsistent with Dr. Maisel's opinion in any way.

The ALJ next noted that the knee was treated conservatively with ibuprofen, exercise, ice and heat, and that the treating provider did not refer Plaintiff to an orthopedic specialist. Tr. 16. This again does not conflict with Dr. Maisel's restrictions, which the Court notes were based on his own examination and diagnosis of "Chronic bilateral knee pain with osteoarthritic changes noted." Tr. 255-56. The Commissioner has cited no authority, and the Court has found none, requiring that a knee impairment be treated with surgery or that a claimant be referred to a specialist in order for the impairment to be found

to cause functional restrictions. Put another way, there is no evidence from which the ALJ could have determined that Plaintiff had no standing or walking restrictions simply because he was not treated with surgery or referred to a specialist, particularly in light of Dr. Maisel's findings of pain based on his examination of Plaintiff. Again, the ALJ made an improper lay judgment as to this issue. See Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004) ("'an ALJ may not make speculative inferences from medical reports and may reject a . . . physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*'") (emphasis in original) (citation omitted).

Based on the foregoing, the ALJ's reason for giving Dr. Maisel's report little weight—that the "opinion is not consistent with the overall medical evidence of record" (Tr. 16)—is not supported. This was not a legitimate basis to reject Dr. Maisel's opinion.

The Commissioner asserts, however, that the ALJ's decision should be affirmed because Plaintiff "sought almost no treatment for back pain and his treatment for knee arthritis was not only limited but successful." Response [#15] at 1. The Court rejects this argument. The record does not show that the conservative treatment was successful in resolving the osteoarthritis; instead, it showed that Plaintiff's knee problem was still chronic. If the treatment had been successful, there would be no reason for the ALJ to have found that Plaintiff's osteoarthritis was a severe impairment. The Commissioner's argument is also a post hoc argument, and this and any other post hoc arguments in the Response [#15] are not proper and will not be considered. See Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004) (the ALJ's decision must be evaluated "based solely on the reasons given stated in the decision"); Carpenter, 537 F.3d at 1267 (a "post hoc rationale is

improper because it usurps the agency's function of weighing and balancing the evidence in the first instance").

Similarly, the Commissioner's argument that Plaintiff had minimal treatment, *Response* [#15] at 1, 8, does not support the ALJ's decision. "[L]ack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations." *Grotendurst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010).

In conclusion, Dr. Maisel's findings as to Plaintiff's functional impairments and pain were "specific medical findings" that the ALJ could not reject in the absence of conflicting evidence. *Washington*, 37 F.3d at 1439; *see also Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996) (an ALJ is "not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals"). The evidence relied on by the ALJ did not conflict with Dr. Maisel's opinion, and the Court finds that the ALJ rejected Dr. Maisel's opinion (and his standing and walking restrictions) without justification. As the ALJ did not properly weigh Dr. Maisel's opinion or give good reasons for giving it little weight, the case must be reversed and remanded on this basis as well.

## IV. Conclusion

For the reasons set forth above, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further proceedings consistent with this Order pursuant to sentence four in 42 U.S.C. § 405(g).[5]

---

[5] The Court finds that this case does not present a proper occasion on which to exercise its discretion and direct the award of benefits. *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir.

IT IS FURTHER **ORDERED** that Plaintiff is **AWARDED** his costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1). *See Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1153 (D. Colo. 2015).

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Plaintiff and **close** this case.

Dated: December 19, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

---

1993). By reversing the ALJ's decision, the Court does not find or imply that Plaintiff is or should be found disabled. *See, e.g.*, *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1152 n.5 (D. Colo. 2015).